This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Mary Lynn Weber appeals from the decision of the Lorain County Court of Common Pleas, Domestic Relations Division, ordering her to repay to her ex-husband Mark Weber overage in child support payments. This court reverses.
 I.
Mark and Mary Lynn Weber were divorced on January 29, 1998. At the time of the divorce there was one minor child of the marriage, Rachel, born on May 6, 1981. Rachel continued to live with Mary Lynn and Mark was ordered to pay child support. The divorce decree incorporated the couple's separation agreement which said Mark's duty to support Rachel would terminate when Rachel turned eighteen, unless she was "continuously attend[ing] on a full-time basis, a recognized and accredited high school."
On March 27, 2000, some two months before Rachel was scheduled to graduate from high school, Mark filed a show cause motion to find Mary Lynn in contempt for failing to notify the court that Rachel "had ceased to be a full-time student at Elyria High School." Apparently Mark filed his motion after receiving an attendance summary from Elyria High School in the spring of 2000 indicating that Rachel was not in attendance at the high school from January 26 to March 24, 2000. The motion also requested termination of the withholding order to Mark's employer, repayment of overage of child support payments, and attorney fees for pursuing this claim.
On June 20, 2000, a hearing was held before the magistrate on the matter of the date of Rachel's emancipation. On July 11, 2000, in a joint document signed by both the judge and the magistrate, the court determined that Rachel was emancipated on June 1, 1999.[1] The court found that Rachel did not regularly attend on a full-time basis an accredited high school during the 1999-2000 academic year, her senior year. The court reached this conclusion based on evidence establishing the following facts.
Ms. Karen Ann Joyce-Foreman, Rachel's instructor at Elyria High School, testified that during her senior year Rachel participated in an occupation-based program administered as part of her Individual Education Plan (IEP). Rachel was placed in this program because educators at the high school determined that training to maintain gainful employment was an appropriate educational/vocational objective, given Rachel's developmental handicap. Rachel received high school credits for this program. At the end of her junior year she had seventeen credits and during her senior year she earned four more, for a total of twenty-one credits, the number needed to graduate. Rachel graduated on June 5, 2000. As part of this program, Rachel worked full-time (forty hours a week) for a private employer, beginning some time in October 1999.
Throughout the program, Ms. Joyce-Foreman monitored Rachel's progress, assessed her job performance, helped her set up a personal budget, and assisted her in resolving problems at her job. This activity required frequent meetings between Rachel and Ms. Joyce-Foreman. However, because of the nature of the program, Rachel was not physically present at the high school during her senior year "[s]ince around October." The attendance summary that Mark received showed that Rachel had unexcused absences on October 4, 1999 and from January 26, 2000 to March 24, 2000. Ms. Joyce-Foreman testified that this was actually an error resulting from a Y2K problem in the school's computer system.
The trial court reviewed the statutory provision that the child support obligation continues after a child turns eighteen only "as long as the child continuously attends on a full-time basis any recognized and accredited high school or the order provides that the duty of support of the child continues beyond the child's eighteenth birthday." R.C.3109.05(E). The court determined that this language required the child to be physically present at the school on a regular, full-time basis. Because Rachel's educational program required her to work at another location, she was not physically present at Elyria High School on a regular full-time basis. Consequently, the trial court determined that pursuant to the child support statute Mark was not obliged to pay child support after June 1, 1999, the last date Rachel attended high school full-time after having turned eighteen. The court declined to hold Mary Lynn in contempt, finding that she truly believed that Rachel was considered a full-time high school student and was entitled to support. The court then ordered Mary Lynn to repay the overpayment, in an amount not specified.
On October 2, 2000, a hearing was held before the magistrate to determine the amount of overage and repayment due, based on the emancipation date of June 1, 1999. The magistrate announced that Child Support Enforcement Agency had determined an amount of overpayment.[2]
Mary Lynn questioned the magistrate directly about the court's earlier determination of the emancipation issue, which Mary Lynn felt was erroneous. The magistrate responded that that issue had been determined and that if Mary Lynn did not agree with the decision, she should have "filed objections to the magistrate's decision."
On October 5, 2000, the trial court entered an order, signed by both the magistrate and the judge, which found that the overage was $3,720.85 and ordered Mary Lynn to repay Mark that amount in monthly installments of $50.00.
From this second determination, Mary Lynn filed an appeal, assigning two errors challenging the date of emancipation and the court's order of repayment. We have rearranged them for ease of discussion.
 II.
ASSIGNMENT OF ERROR II.
 The Court erred in ordering that the Appellant's right to receive child support from the Appellee terminated on the last day of their child's third school year out of a four school year program when the child went on to complete the fourth year of the program in which the child's high school had placed her for the purpose of enabling her to obtain her high school diploma.
 A. Timeliness of Appeal on Emancipation Date
We turn first to the second assigned error, challenging the trial court's determination of the date of Rachel's emancipation. Mark has responded to the second assignment of error, stating that Mary Lynn's attempt to appeal this is untimely, pursuant to App.R. 4(A), as the court had entered a final order on July 11, 2000, almost five months prior to Mary Lynn's filing of the notice of appeal. We must first determine whether Mary Lynn's challenge of the July 11, 2000 emancipation order is timely.
It is clear that the emancipation matter had been referred to the magistrate for a hearing. The transcript of the hearing was marked as having been held before the magistrate. The July 11, 2000 order was signed by both the magistrate and the judge; however, there is no evidence that the matter was heard by the judge. Civ.R. 53 provides that when a matter is referred to the magistrate, the magistrate will issue a decision with factual findings and legal conclusions. When the magistrate's decision is journalized, the parties have fourteen days in which to file objections to the magistrate's decision with the court, supported by a transcript or affidavit as to the evidence submitted at the hearing. Upon receiving objections, the trial court must adopt, reject or modify the decision and enter an order. See Harkai v. ScherbaIndustries, Inc. (2000), 136 Ohio App.3d 211, 220-221.
In the instant case, Mary Lynn did not file any objections to the magistrate's decision. Failure to file objections is normally fatal to a later appeal on the same issues. Civ.R. 53(E)(3)(b); see, also, Greenv. Clair (Feb. 14, 2001), Summit App. No. 20271, unreported, at 3. However, it does not appear that the journalized order was a magistrate's decision. The July 11, 2000 order was not marked as a magistrate's decision and the trial court did not specifically adopt, reject or modify it in a later journal entry. In fact, it is clear that the trial court did not view this journal entry as a magistrate's decision. Less than fourteen days after the initial order of June 30, 2000, the court changed the order on "THE COURT'S OWN 60 B [sic] MOTION" to change the emancipation date from "6-1-00" to "6-1-99." Because Civ.R. 60(B) permits relief from judgment, not a change in a magistrate's decision, it seems clear that the trial court considered the July 11, 2000 order (and the June 30, 2000 order which it modified) to be a judgment by the court on the merits of the issues.
This court concludes that although the magistrate heard the matter that was entrusted to him, he failed to file a magistrate's decision in compliance with the requirements of Civ.R. 53. Thus, Mary Lynn cannot be held to a failure to object to a non-existent magistrate's decision.
Next we must determine if the July 11, 2000 journal entry was a final, appealable order issued by the trial court on the merits. This judgment entry fails to meet the required standards of finality requiring an appeal within thirty days pursuant to App.R. 4(A). We reach this conclusion for the following reasons. The order entered was issued in response to Mark's motion, inter alia, for repayment of the overage based on the emancipation date determined by the court. However, the July 11, 2000 order determines only that no further support was appropriate after a certain date and the order states that "EXCESS/IMPOUNDED PAYMENTS TO BE RETURNED TO THE PAYOR." The order does not state how much money Mary Lynn was required to repay to Mark. This court has written:
 [T]he content of the judgment must be definite enough to be susceptible to further enforcement and provide sufficient information to enable the parties to understand the outcome of the case. If the judgment fails to speak to an area which was disputed, uses ambiguous or confusing language, or is otherwise indefinite, the parties and subsequent courts will be unable to determine how the parties' rights and obligations were fixed by the trial court.
 Walker v. Walker (Aug. 5, 1987), summit App. 12978, unreported, at 4. See, also, Harkai, 136 Ohio App.3d at 215-216.
For this order to be final, the order must address all the claims listed in Mark's motion. Mark moved for: a determination of the emancipation date; termination of the child support withholding order; a determination that Mary Lynn was in contempt of court and assessing attorney fees for the contempt; and repayment of overage. The trial court did not determine the amount to be repaid by Mary Lynn. Nor did the trial court determine that pursuant to Civ.R. 54(B), there was no just reason to delay appeal of the adjudicated claims. The July 11, 2000 order was not final and appealable.
Mary Lynn's right to appeal terminated thirty days after the journalization of a final order of the court. See App.R. 4(A); Civ.R. 54(B). It was not until the court determined on October 5, 2000 that Mary Lynn owed Mark $3,720.85 in overpayment of child support that the court had resolved all the claims before it. The notice of appeal filed on November 2, 2000 was timely as to both court orders.
We now turn to the merits of Mary Lynn's arguments.
 B. Emancipation
The trial court determined that after June 1, 1999, Rachel was not "continuously attend[ing] on a full-time basis any recognized and accredited high school," pursuant to R.C. 3109.05(E). The court found that the statute's use of the word "attends" implies that the child must be physically present at the school. The evidence before the trial court established that Rachel was not physically present at the high school on a full time basis "[s]ince around October [1999]."
The statute does not define "attend." The General Assembly clearly intended to require parents to provide support to their minor children. The General Assembly could have determined that when a child reaches the age of majority at 18, cf. R.C. 3109.01, the parent is no longer required to support the child. However, the General Assembly has provided that for a child who is 18 but is still attending high school the parental obligation to support will continue until age 19.[3] The clear purpose of this legislation is to ensure that parents support their child so long as the child is working to obtain a basic level of training and education, as provided by high school program, with the ultimate goal of enabling the child to become self-sufficient.
Mark argued, and the court agreed, that because Rachel was not physically present at the high school, she was not in attendance. In of support his argument, Mark provided to this court a copy of the definition of "attend" found in The Concise Oxford Dictionary (1964). That definition is: "Turn the mind to; apply oneself (to * * *); be present (at); wait upon; (trans.) wait upon; escort, accompany; be present at (lecture etc.)." Mark prefers the "be present at" meaning. However, according to the sole testimony on this matter as presented by Ms. Joyce-Foreman, Rachel did meet several other definitions of "attend" proffered by Mark. During her full-time employment, Rachel "appl[ied] [her]self" to the enterprise of learning how to be a gainfully employed individual, while under the tutelage of Ms. Joyce-Foreman. Given that the purpose of high school attendance is to learn skills directed toward ultimate self-sufficiency, this court cannot conclude that the General Assembly intended this statute to insist on physical presence at a particular building, to the exclusion of regular, full-time participation in the educational program.
The issue before us is not developed in case law. The trial court relied on the Fifth District's decision in Chowdhurry v. Fitzgerald
(Mar. 27, 1997), Guernsey App. No. 96 CA 43, unreported. In Chowdhurry,
the eighteen-year-old child's application to college included his high school principal's signed conditional promise to apply the child's anticipated college credits toward the credits needed to graduate from high school. The Fifth District held that the trial court did not abuse its discretion in finding that the child was not attending an accredited high school for purposes of child support. However, the Chowdhurry court affirmed the trial court in large part because appellant, the custodial parent, had not produced a trial court record on appeal pursuant to App.R. 9. For that reason, Chowdhurry offers little guidance for the instant case.
This court discovered no other cases on point. Only one case addresses the intent of the legislature regarding attendance at high school. InBrown v. Brown (Dec. 27, 1995), Mahoning App. No. 94 C.A. 172, unreported, the Seventh District dealt with a minor child who was being home-schooled by his mother, the custodial parent. The child turned eighteen before he completed his high school education. Father sought termination of support for the child on the basis that the child was not attending a "recognized and accredited high school." The Seventh District held that mother's home instruction program was approved by the state, and thus mother's home instruction program was "recognized and accredited" within the meaning of the statute.
Although the statute does not define "attend," this court cannot conclude that the General Assembly intended this law to preclude support for someone like Rachel who is endeavoring to learn the skills necessary to achieve self-sufficiency, in a course of instruction offered by an accredited high school. The fact that Elyria High School offered Rachel a course of instruction off-campus and with the assistance of other individuals or entities did not render her an emancipated individual for the purpose of child support.
We believe that the evidence before the trial court clearly established that Rachel spent her senior year in high school engaged in an accredited course of study offered and conducted by Elyria High School. This meets the intent of the General Assembly to ensure that the parents of an eighteen-year-old will support her until her nineteenth birthday, so long as she is attending high school. The evidence established that Rachel turned nineteen on May 6, 2000. Therefore, Mark was obliged to support her until that date.
Mary Lynn's second assignment of error is well-taken and it is sustained.
 III.
ASSIGNMENT OF ERROR I.
 The Court erred in ordering the Defendant-Appellant, Mary Lynn Weber, to pay money to Plaintiff-Appellee, Mark Weber.
 Mary Lynn's first assignment of error actually argues three points: (1) CSEA had no right to pursue repayment of the overage; (2) no evidence was presented as to the amount of the overage; and (3) the order to repay overage was erroneous because the order was based upon an erroneous emancipation date.
Upon our resolution of the emancipation matter, we sustain the third issue of the assigned error, and overrule as moot the first and second issues.
The decision of the trial court is reversed and the cause remanded for further proceedings consistent with this decision.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellee.
Exceptions.
______________________________________ WILLIAM R. BAIRD
BATCHELDER, P.J., SLABY, J. CONCUR.
[1] Actually, this journal entry was a re-entry of an order dated June 30, 2000, which was identical in every respect except for the date of Rachel's emancipation. The initial order determined that Rachel was emancipated on "6-1-00" but the court in the later journal entry changed the emancipation date to "6-1-99" pursuant to "THE COURT'S OWN 60 B [sic] MOTION." Both journal entries were signed by both the magistrate and the judge.
[2] No evidence was presented as to the amount. The magistrate simply announced that CSEA's record showed an overpayment of $3,720.85.
[3] This issue implicates the following statutes: R.C. 3103.03(B), 3103.031, 3105.21(C) and 3105.09(E); the General Assembly has changed these statutes effective March 22, 2001. All references to an outside age limit of 19 for providing child support have been stricken from these statutes, and incorporated in a new statute, R.C. 3119.86.